IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES OLIVAREZ | § | |
| | § | |
| V. | § | A-16-CV-122-AWA |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Brief in Support of Claim (Dkt. No. 15), and Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 16). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

### I. GENERAL BACKGROUND

On October 3, 2013, Plaintiff James Olivarez filed his application for disability insurance benefits and Supplemental Security Income (SSI) alleging he became unable to work on August 22, 2013, due to depression, lower back pain, and rheumatoid arthritis. After the Agency denied his application initially and again on reconsideration, Olivarez requested an administrative hearing. Olivarez's past relevant work included working as a parts clerk. Olivarez and his attorney, Gabriel Reyes, attended the administrative hearing before Administrative Law Judge ("ALJ") James Lineham on July 9, 2015. Olivarez testified that he did not graduate from high school or receive a GED. On July 31, 2015, the ALJ issued a decision finding that Olivarez was not disabled under the Act. The Appeals Council denied Olivarez's request for review on December 9, 2015. Olivarez has exhausted his administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The claimant has the burden of proof for the first four steps;  at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III. THE ALJ's OPINION

The ALJ employed the regulations' five-step sequential evaluation process to determine whether Olivarez was disabled. 20 C.F.R. § 404.1520(a); *see* Tr. 14-26. At step one, the ALJ determined that Olivarez had not engaged in substantial gainful activity since the application date of August 22, 2013. At step two, the ALJ found that Olivarez suffers from severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease right knee, rheumatoid

arthritis, obesity, and depressive disorder, recurrent, moderate. At step three, the ALJ found that, considered separately and in combination, Olivarez's impairments did not meet or medically equal the severity criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and thus his impairments were not presumptively disabling. Before proceeding to step four, the ALJ determined that Olivarez had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 C.F.R. § 404.14567(c) and 416.967(b) except with non-exertional limitations in that the claimant would be limited to work with the ability to understand, remember and carry out detailed but not complex written or oral instructions; and set realistic goals and plans independently of others.

Tr. at 21. In making this RFC determination, the ALJ concluded that Olivarez's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. Tr. at 22. At step four, the ALJ determined that Olivarez was unable to perform his past relevant work. In light of his impairments listed above, the ALJ found that Olivarez had the RFC to perform work as a dining room attendant, dry cleaner helper, and hospital cleaner, which exist in significant numbers in the national economy. Accordingly, the ALJ found that Olivarez was not disabled as defined in the Social Security Act.

## IV. ANALYSIS

Olivarez solely argues that the ALJ's credibility finding was not supported by substantial evidence. As part of this argument, Olivarez contends that (1) the ALJ erred by considering Olivarez's receipt of unemployment benefits; and (2) the ALJ erred in weighing Olivarez's daily activities.

When assessing the credibility of an individual's statements, the ALJ is required to consider:

1.    the individual's daily activities;

2. the location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. factors that precipitate and aggravate the symptoms;

4. the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008). In considering these factors, "[t]he ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011); *see also Pineda v. Astrue*, 289 F. App'x 710, 714 (5th Cir. 2008) (per curiam).

**A.   The ALJ did not err in considering Olivarez's receipt of unemployment benefits**

Olivarez first argues that the ALJ erred in considering Olivarez's receipt of unemployment benefits. While the receipt of unemployment benefits does not by itself preclude a finding of disability, it "is one factor that can be considered." *Jamison v. Colvin*, No. 6:15-CV-166, 2015 WL 5822592, at *5 (W.D. Tex. Oct. 5, 2015); *see also Wills v. Colvin*, No. 1:14-CV-504, 2016 WL 792693, at *3 (quoting Chief ALJ Memorandum, No, 10-1528, Aug. 9, 2010 for the proposition that an "application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence"). Here, the ALJ listed this as one factor among many that he considered. The ALJ noted that the claimant did not quit work due to disability. Tr. 23. Instead,

Olivarez reported to Dr. Ahr that his job ended when the store closed down. Tr. 259. He also reported that "[h]e has put in applications 'everywhere' but 'nobody is hiring,'" and that "[h]e spends the day on the internet looking for work." *Id.* A claimant's "efforts to obtain employment and receipt of unemployment benefits are not improper factors to be considered." *Jamison*, 2015 WL 5822592, at *5. Therefore, the ALJ did not err by considering Olivarez's receipt of unemployment benefits.

**B.     The ALJ properly weighed Olivarez's daily activities**

Olivarez next argues that the ALJ relied too heavily on Olivarez's "minimal" daily activities in finding that his symptoms were not credible. Dkt. No. 17 at 4. He contends that "the ALJ only considered parts of the record and not the record as a whole." *Id.* However, "[i]t must be remembered that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (quoting *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)). Further, inconsistencies between a claimant's testimony about his limitations and his daily activities are "quite relevant in evaluating his credibility." *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). Here, the ALJ noted that "the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable," and accordingly found that Olivarez's reported symptoms were "out of proportion with the objective medical findings." Tr. 23-24. Substantial evidence supports the credibility finding of the ALJ.

First, the ALJ noted multiple inconsistencies with Olivarez's testimony. Olivarez testified first that he has significant pain in his knees and back which makes it difficult to stand. Tr. 38. Olivarez also stated that he is short of breath, has a hard time breathing, and can only walk for a

block, stand for 30-45 minutes, and sit for 30-60 minutes. Tr. 40. This testimony was then supported by Olivarez's statements that he does not cook, clean, or take care of his disabled wife. Tr. 42-43. However, these statements are in contrast to previous statements made by Olivarez. In his reports to the consultative examining psychologist, Dr. Ahr, Olivarez stated that he can cook, wash dishes, do laundry, bathe, dress, shave, and shop for groceries. Tr. 259. Similarly, in his function report filled out on October 18, 2013, Olivarez reports that though he has pain in his knees and back, he is able to cook, wash dishes, and take care of his disabled wife. Tr. 181. Olivarez also reports going outside two to three times a day and shopping for groceries once a month for two to three hours. Tr. 183.[1] Thus, Olivarez's statements as to his daily activities and limitations are contradictory.

      Moreover, Olivarez's statements are in contrast to the medical record. At the examination performed by state examining physician, Dr. Rajeev Gupta, Olivarez did not report any difficulty walking, general weakness or joint stiffness, limitations in joint movement, or use of assisted devices, such as a cane. Tr. 245. Dr. Gupta did note that Olivarez complained of lower back pain and pain in his right knee, but found no evidence of clubbing, cyanosis, or edema. Tr. 246. Additionally, Olivarez was able to perform the full range of motion, was able to sit, stand, and squat, and had normal gait and tandem. *Id.* Dr. Gupta found no evidence of muscle weakness, and no respiratory or cardiovascular issues. *Id.* Additionally, when Olivarez had an ECG in 2015, it came back within normal limits. Tr. 271-72.

---

[1] In a separate function report filed December 24, 2013, some of these statements change once again. Olivarez reports that he does not take care of his wife (Tr. 211), goes outside for only a few minutes a day (Tr. 213), and shops once a week for an hour (Tr. 213). However, he still states that he cooks and washes dishes. Tr. 211-12.

Olivarez also contended that his "hands don't want to work," and that he was diagnosed with rheumatoid arthritis in 1998. Tr. 38-39. At the hearing, he testified that he had difficulty gripping things, and that he could not perform housework because of this. Tr. 43, 45-46. However, as noted above, Olivarez reported on multiple occasions that he cooks and washes dishes and that he is able to dress, shave, and bathe. Tr. 181, 259. Olivarez also reported that he spends time on the computer on social media sites and playing PC games. Tr. 44, 184. Additionally, Dr. Gupta's examination found that Olivarez had no evidence of clubbing, cyanosis, edema, or weakness in his grip. Tr. 246. The ALJ further relied on the state agency physicians, both of whom found that Olivarez could perform the full range of medium work. Tr. 23.

Moreover, the ALJ noted that Olivarez has not sought treatment by a rheumatologist or orthopedist. Tr. 23. Instead, Olivarez reports sometimes wearing an over-the counter brace, occasionally using a cane, and taking ibuprofen for the pain. Tr. 38-39, 186. While Olivarez testified that he is unable to afford medical treatment, the ALJ found no records of Olivarez being denied treatment. Tr. 23. Also, the ALJ noted that Olivarez was able to afford his smoking habit of a half-pack of cigarettes a day. *Id.* Thus, the ALJ considered Olivarez's lack of treatment as another factor supporting his credibility determination.

Lastly, Olivarez relies on a letter from Dr. Juan A. Davila to support his contentions. The letter does provide some support for Olivarez's alleged symptoms. Tr. 273. However, the letter was dated September 22, 2015, which is two months after the ALJ issued his opinion. Also, the letter provides only conclusory statements that Olivarez suffers from certain impairments. *Id.* There is no record of any examination performed by Dr. Davila at all, much less one that supports his

statements in the letter. Therefore, the letter does not overcome the evidence in the record supporting the ALJ's credibility determination.

## VI. CONCLUSION

Based upon the foregoing, the Court finds that substantial evidence in the record supports the ALJ's credibility finding in this case and that the ALJ correctly applied the legal standards. It is important to remember that the task of weighing the evidence is the province of the ALJ, whereas the task of the Court is merely to determine if there is substantial evidence in the record as a whole to support the ALJ's decision. *Chambliss*, 269 F.3d at 523. Because substantial evidence in the record supports the ALJ's credibility determination in this case, the decision of the Commissioner of the Social Security Administration is AFFIRMED.

SIGNED this 9th day of January, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE